UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01796-WYD

TERRY L. NOLLER,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

I.   <u>INTRODUCTION</u>

      THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's applications for Disability Insurance Benefits ["DIB"] and Supplemental

Security Income ["SSI"] under Titles II and XVI of the Social Security Act ["the Act"].  For

the reasons stated below, this case is reversed and remanded for further factfinding.

      Plaintiff was born in April 1949 and was 52 years old on his alleged onset date.

He is currently 59.  In June 2002, Plaintiff protectively filed applications for benefits

claiming that he became disabled on June 4, 1998, due to depression, anxiety, and

neck and back pain.  (Transcript [Tr."] 90, 113.)  Plaintiff alleged that he could not sleep,

had anxiety, difficulty focusing, nightmares, apathy, panic attacks, muscle spasms, and

extreme fatigue.  (*Id.* 113.)  Plaintiff amended his disability onset date to July 1, 2001.

(*Id.* 35.)  Plaintiff's claims were denied initially and by an Administrative Law Judge in

February 2004.  (*Id.* 32-43.)  Plaintiff filed a request for review in March 2004.  (*Id.* 72.)

While his case was pending, Plaintiff filed a new SSI claim in August 2004 (Tr. 321). He was awarded benefits based on affective and anxiety disorders, with an onset date of August 1, 2004. (*Id.* 44A.)

In November 2004, the Appeals Council vacated the February 2004 decision of the Administrative Law Judge ["ALJ"], and remanded the case for further proceedings. (Tr. 82-84.) It ordered, among other things, further consideration of Plaintiff's maximum RFC for "unskilled sedentary work", with "specific references to evidence of record in support of the assessed limitations." (*Id.* 83.) If warranted, the ALJ was to obtain evidence from a vocational expert ["VE"] to clarify the effect of the assessed limitations on the occupational base. (*Id.* 84.) The ALJ was ordered to resolve any conflicts between the Dictionary of Occupational Titles ["DOT"] and the evidence from the VE. *Id.* Finally, the ALJ was ordered to "take any further action needed to complete the administrative record and issue a new decision." (*Id.*)

The ALJ held a new hearing in September 2005. (Tr. 302-15). In a November 2005 decision, the ALJ concluded at step four that Plaintiff was not disabled at any time prior to August 1, 2004 as he was able to perform his past relevant work. (*Id.* 15-28.) The Appeals Council declined review. (*Id.* 10-12.) The ALJ's decision is the final administrative decision, and this case is ripe for review pursuant to 42 U.S.C. § 405(g).

II.    THE ALJ'S DECISION

The ALJ made the following findings in his November 2004 decision:

1.    Plaintiff's disability insured status expired on December 31, 2002, and Plaintiff had to demonstrate that he was under a disability prior to expiration of his insured status. (Tr. 19, 27.) Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (July 1, 2001). (*Id.*)

2.      From July 1, 2001, to August 1, 2004, Plaintiff had the following "severe" impairments: mild degenerative changes of the lumbar spine, and neck and back pain.  (Tr. 20, 27.)   The ALJ found that Plaintiff's mental impairments were not severe during the time period at issue.  (*Id.* 20-21.)

3.      Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).  (Tr. 21, 27.)

4.      Plaintiff's "statements concerning his impairments and their impact on his ability to work for the period of time from July 1, 2001, to August 1, 2004, are not entirely credible in light of the claimant's own description of his activities and life style, the degree of medical treatment required, the reports of the treating and examining practitioners and the findings made on examination."  (Tr. 22.)

4.      From July 1, 2001, to August 1, 2004, Plaintiff had the RFC to perform a range of light to medium work.  (Tr. 28, Finding 5.)  The RFC was that Plaintiff could lift and carry 25 pounds frequently and 40 pounds occasionally; climb, stoop, kneel, crouch, and crawl occasionally.  (Tr. 25, 28.)  Further, Plaintiff needed the option to shift positions to stretch and was not able to balance as a primary function of his work or to perform activities that required balancing in the workplace.  (*Id.* 25.)

5.      Based on the testimony of the VE and considering Plaintiff's RFC and the job requirements of Plaintiff's past work as described in the DOT, Plaintiff was not prevented from performing his past relevant work as a customer service representative and customer service representative supervisor from July 1, 2001, to August 1, 2004.  (Tr. 26-28.)

Based on the foregoing, the ALJ found that Plaintiff was not disabled at step four of the sequential evaluation.  (Tr. 27-28.)

III.    ANALYSIS

A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

My review of the record reveals a number of errors that require the ALJ's decision to be reversed and remanded for a rehearing. I address these below.

B.    Whether the ALJ's Decision is Supported by Substantial Evidence

1.    Whether the ALJ Erred at Step Two in not Finding Plaintiff's Mental Impairments to be Severe

Plaintiff argues that the ALJ erred in not finding his mental impairments to be severe. He alleges that his impairments began in June 1998 after his twin brother Kerry committed suicide. It is asserted that the Noller family has a history of suicide (Tr. at 141.) Plaintiff has been under continuous medical treatment for depression since June 1998, and asserts that the medical sources have considered his brother's suicide and his family history as significant factors in assessing Plaintiff's mental condition.

As stated earlier, the ALJ found that Plaintiff's mental impairments were not severe as they were not supported by the medical record. (Tr. 20-21.) He found:

For example, the claimant testified he was not able to focus and did not
want to get out of bed.  However, at the time of his formal evaluation, the
claimant demonstrated good pace, good memory, good abstract thinking,
above average fund of knowledge and only some deficits in concentration.
While the claimant's global assessment of functioning was fifty-five at the
time of his January 2003 evaluation, it rose significantly and quickly with
therapy.  His global assessments of functioning were sixty-five to seventy,
indicating only some mild symptoms.  Furthermore, at the time of his
consultative evaluation with Dr. Schaeffer, the claimant reported he read
the paper, watched television, ate regular meals, did household chores,
drew, ran errands, went shopping and visited with his family.  (Exhibit 7F
at  p. 2.)  Though the claimant specifically complained of trouble with
these activities due to memory loss and easy distractibility, these deficits
were not noted on formal testing, as noted above.  (Id.)  Thus, while the
claimant has subjective complaints related to his mental impairment
diagnosis, these subjective complaints are not borne out by the medical
record for the period of time prior to August 1, 2004.

(*Id*. 21.)   The ALJ further relied on the fact that Plaintiff's therapist Dr. Blaine stated he

did not feel comfortable filling out forms documenting that Plaintiff's date of loss was

prior to December 2002, as requested by Plaintiff's representative, and the fact that

while Plaintiff argued to the Appeals Council that it was error to fail to include the mental

impairments in the RFC, it did not remand on that issue.  (*Id*.)

I agree with Plaintiff that the ALJ erred at step two in connection with his

assessment of Plaintiff's mental impairments.  Accordingly, I find that this case must be

remanded for a proper assessment of whether Plaintiff's mental impairments are

severe.  "Step two is designed 'to weed out at an early stage of the administrative

process those individuals who cannot possibly meet the statutory definition of

disability.'"  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. 2004)

(quotation omitted).[1]  "While 'the mere presence of a condition or ailment' is not enough

---

[1]  I have cited this and other unpublished opinions in this Order because the cases have
persuasive value with respect to a material issue that has not been addressed in a published opinion

to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004)). In order to make this showing, it must be demonstrated that a particular impairment has "more than a minimal effect" on a claimant's ability to work. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). An impairment need not be independently disabling to be considered severe.

In the case at hand, it is unclear exactly what evidence the ALJ relied on in formulating his opinion at step two. While he refers to the consultative opinion of Dr. Schaeffer from October 2002 (Exhibit 7F, Tr. 204-208), a January 2003 evaluation, unidentified "formal testing" and various GAF scores (Tr. 20-21), he does not identify what specific evidence he relies on in deciding that Plaintiff's impairments at step two are not severe. Plaintiff argues that the ALJ's step two determination was based solely on a nonexaminer's report formulated by a disability examiner after reviewing Dr. Schaeffer's report (citing Tr. 165-178). This is simply unclear, which makes it difficult to properly review the ALJ's findings at this step.

Further and more importantly, the ALJ does not refer at all in this step to the opinions of treating physicians Dr. Greene or other medical evidence from treating practitioners which supports the mental impairments noted by Plaintiff. Thus, he does not state whether any of this evidence is relevant to his findings at step two and/or whether he rejects such evidence at this step. I note that the medical evidence of record

---

and/or they will assist me in the disposition of this case. 10th Cir. R. 36.3(B).

uniformly states that Plaintiff is suffering from depression, anxiety, post traumatic stress disorder ["PTSD"] and other mental impairments, and the evidence is pretty uniform in stating that these problems manifested or were exacerbated in 1998 after the suicide of Plaintiff's brother.  (*See, e.g.*, Tr. 190, 253- 255 (Greene, MD); 193, 195 (Glassman, DO); 208 (Schaeffer, MD); 211 (Finch, MD); 224-227 (Behavioral Health Care, Inc.), 234, 240-41 (Robbins, MD), 255-63 (Blaine, Psy.D), 264-67 (Moran, MD), 282 (Blaine), 378-81 (Wise, MD).  Obviously, this needed to be considered in connection with the determination as to whether Plaintiff's mental impairments were severe, and needs to be adequately addressed on remand.

Further, the ALJ's decision ignores the evidence in the record regarding the symptoms that Plaintiff was experiencing from depression and the other mental diagnoses, including such things as sleep difficulties, anxiety attacks, flat affect, feelings of hopelessness, decreased concentration, decreased motivation, and high levels of anxiety.  (*See, e.g.*, Tr. 187, 193, 208, 253, 227, 240).  These symptoms are different than the type of cognitive symptoms that were measured by Dr. Schaeffer.  This evidence must be considered on remand since they appear to be based on observed signs by Plaintiff's medical practitioners.  *Thomas v. Barnhart*, No. 04-7141, 2005 WL 2114163, at *4 (10th Cir. 2005) (a psychological opinion . . . 'may rest either on observed signs or on psychological tests'") (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)).

There is also medical evidence that supports these findings prior to the date Plaintiff was last insured ["DLI"].  Treating physician Dr. Greene has been Plaintiff's doctor since 1980 (Tr. 214), and diagnosed depression in 1999, for which he prescribed

Ambien, Paxil, Effexor, and Buspar. (*Id.* 187-190). In August 2002 and August 2003, Dr. Greene submitted Med-9 forms stating Noller had "no work capacity" due to PTSD, depression, sleep disorder, and dependent personality disorder. (*Id.* 253, 256). Dr. Greene stated Plaintiff had experienced depression (a severe relapse) since the suicide of his twin brother. (*Id.* 253.) While the ALJ did not refer to this at step two, he did reject this assessment in connection with the RFC. I discuss this in the next section, but note that I find error in connection with such finding.

Other evidence supportive of Plaintiff's impairments include Dr. Glassman's treatment. In 1997 Dr. Glassman began treating Plaintiff's physical impairments (Tr. 200), and by September 1999, he diagnosed and treated depression with Paxil. (*Id.* 195, 198.) In July 2002, he changed Plaintiff's anti-depressant to Xanax and referred him for psychiatric treatment. (*Id.* 193.) In January 2003, Plaintiff began treatment with Dr. Robbins at Aurora Mental Health, who also diagnosed depression and problems related to same which was precipitated by his brother's suicide. (*Id.* 224-252.)

There was also evidence of Plaintiff's mental impairments after Plaintiff's DLI. For example, in January 2003, only shortly after the DLI, Plaintiff was found to have a GAF of 55, indicative of moderate symptoms. (Tr. 227.) He was diagnosed with "Major Depressive Disorder, Recurrent, Severe", supported by diagnostic criteria including depressed mood, anhedonia, fatigue, decreased concentration, flat effect, etc. (*Id.* 227.) In June 2003 Dr. Robbins found that Plaintiff's "main symptoms are major problems with interest and enjoyment, energy, concentration, decreased sleep and variable appetite" and "high levels of anxiety and decreased motivation." (*Id.* 240). She found that Plaintiff "has all the symptoms of depression as noted above and assessed a GAF of 65." (*Id.*

241.)  In July 2003 Dr. Robbins found that although certain symptoms were better, Plaintiff was reporting major and moderate problems related to his depression.  (*Id*. 238.) A GAF of 70 was assessed.  (*Id*.)  By September 2003 Dr. Robbins found that Plaintiff was voicing continued, significant, depressant symptoms, lowered the GAF to 65, and added a medication.  (*Id*. 232.)  Finally, Dr. Blaine began seeing Plaintiff in August of 2004 and assessed significant mental impairments and a GAF of 55 in October 2004. (*Id*. 257-263.)

As indicated earlier, the ALJ found Plaintiff had to demonstrate that he was under a disability prior to expiration of his insured status in December 2002.  However, the ALJ considered later evidence in reaching his decision, including evidence up to August 2004 and even thereafter.  Further, if a claimant's mental impairment "manifested itself as a disability before the end of his insurance window - even if that mental impairment was diagnosed after the window had closed, the Commissioner is responsible for covering the impairment".  *Grogan v. Barnhart*, 399 F.3d 1257, 1259 (10tth Cir. 2005).  Thus, evidence after the DLI can be relevant (*id.)*, particularly in this case where the ALJ was determining whether Plaintiff was disabled up to August of 2004.  Accordingly, I find it was error for the ALJ not to discuss or consider this medical evidence at step two, and this must be done on remand.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("in addition to discussing evidence supporting his decision, an ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").[2]

_____

[2]  This also should include consideration of Dr. Blaine's assessment, since he began treating Plaintiff in August 2004, just days after the time period at issue.  To find that Dr. Blaine's assessment has

I further note that on remand, the ALJ must address whether the actual onset date of Plaintiff's mental impairments was prior to August 1, 2004. On that issue, the ALJ stated that the August 2004 date was the "established onset date" for Plaintiff's severe mental impairments. (Tr. 19.) He did not explain his reasoning as to that finding. While it is true that in Plaintiff's subsequent SSI claim filed in August 2004, the ALJ found an onset date of August 1, 2004 as to Plaintiff's affective and anxiety disorders, this does not rule out an earlier onset date. The ALJ in the later SSI claim was not required to determine whether there was an earlier onset date than Plaintiff's application. The ALJ in this case was, however, required to determine the appropriate onset date if the medical evidence suggested that it was prior to the August 2004 date. The ALJ noted that the disability finding as of August 2004 was supported by the fact that Plaintiff's GAF had dropped to 55, "reflecting moderate symptoms." (Tr. 24.) However, the ALJ ignored the evidence of moderate impairments that existed prior to that time, including the January 2003 assessment assessing that same score of 55 and Dr. Schaeffer's assigned GAF score of 60 which was assessed prior to the DLI. Further, he ignored the other medical evidence in the record that supported the existence of Plaintiff's mental impairments prior to August 1, 2004, as detailed above.

According to the Tenth Circuit, "[f]actors relevant to determining an onset date include the claimant's allegations of an onset date and the claimant's work history, but '[t]he medical evidence serves as the primary element in the onset determination.'"

_____

no relevance when it was issued so shortly after the relevant period seems unfair, particularly given the holding in *Grogan*. *Id.*, 399 F.3d at 1263 (holding that the ALJ erred in not considering mental health treatment evidence of the claimant's impairment from two years beyond his insured status "window").

*Wiederholt v. Barnhart*, No. 03-3251, 121 Fed. Appx. 833, 837 (10th Cir. 2005) (quoting Soc. Sec. Rul. 83-20, 1983 WL 31249, at *2 (1983)). "'[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence.'" *Id.* (quotation omitted.) Where the medical evidence of onset is ambiguous, it may be necessary for an ALJ to call a medical advisor at the hearing to infer an onset date. *Id.*

In this case, I agree with Plaintiff that the finding of an August 2004 onset date is inconsistent with Plaintiff's allegations and appears also to be inconsistent with at least some of the medical evidence of record cited previously as to Plaintiff's impairments. Certainly Dr. Greene's records suggest an earlier onset date. Further, Dr. Schaeffer's evaluation and/or the January 2003 assessment suggest an earlier onset date. This needs to be adequately addressed on remand.

I further note that to the extent the ALJ relied on the opinion of Dr. Schaeffer to support his findings at step two, I am not convinced that this constitutes substantial evidence. Dr. Schaeffer, a psychological consultant hired by the Social Security Administration in 2002, diagnosed major depression and an anxiety disorder and assigned a GAF score of 60. (Tr. 208.) He further noted that Plaintiff suffers from panic attacks, although he did not believe that Plaintiff met the criteria for a panic disorder. (*Id.*) Dr. Schaeffer's diagnoses were generally consistent with the other medical practitioners.

The GAF score of 60 assigned by Dr. Schaeffer (which he found to be the highest score over the year) was consistent with a finding that Plaintiff's impairments more than mildly affected his ability to work. A GAF score of 51 to 60 "indicates 'moderate symptoms,' or 'moderate difficulty in social, occupational, or school functioning.'"

*Roybal v. Astrue*, No. 06-4189, 2007 WL 1475276, at *1 n. 1 (10th Cir. 2007) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000) (*DSM-IV*)).  Interestingly, as stated earlier, Plaintiff's GAF score fell even further to a 55 in January 2003, just shortly after Plaintiff's DLI.

"Standing alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work", as the claimant's impairment might, for example, lie solely within the social rather than the occupational sphere.  *Lee*, 2004 WL 2810224, at *3.  Here, however, Dr. Schaeffer opined as to impairments that would appear to be within the occupational, rather than the social, sphere."  *Id.*  In that regard, he found deficits in connection with Plaintiff's concentration and opined that Plaintiff's sustained concentration was mildly impaired, his judgment was questionable and adaptation was very hard for the Plaintiff.  (Tr. 208.)  These deficits and the GAF score of 60 were not properly considered by the ALJ.  The Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all.  *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007).[3]  Further, had the ALJ believed the record was unclear on this issue, he should have contacted Dr. Schaeffer or the other practitioners that assigned GAF scores.  *See Thomas*, 2005 WL 2114163, at *4.

Instead, the ALJ focused on GAF scores assigned after the DLI.  He stated that while Plaintiff's GAF score was 55 in January 2003 evaluation, "it rose significantly and quickly with therapy" to 65 and 70, " indicating only some mild symptoms." (Tr. 20.)  I am confused by this finding and believe it may not be supported by substantial evidence.

---

[3]  I address the ALJ's discussion of the concentration deficit in the next section.

The ALJ found that Plaintiff had to show that he was disabled as of the DLI. As of that date, the record is undisputed that the GAF scores were indicative of moderate, not mild, limitations, and there was record evidence of Plaintiff's depression and impairments and symptoms related to same that were not properly considered. If the ALJ was limiting the evidence to that which occurred prior to the DLI, this finding would have been erroneous as it was based on later evidence. However, the ALJ was also assessing whether Plaintiff was disabled at any time up to August of 2004, after the DLI. Thus, he considered certain evidence in the record after the DLI when it supported his findings. I find that this issue, *i.e.* the time frame of the evidence that is relevant to Plaintiff's alleged disability, also needs to be clarified on remand.

I further note under principles of fundamental fairness that the ALJ on remand cannot refuse to consider the evidence after the DLI (or other date that the ALJ decides is the cut-off point of relevant evidence) when it supports a finding of disability but then rely on this same evidence when it supports his findings. It appears that the ALJ did that in his opinion. Specifically, he considered certain evidence from after August 2004 when it supported his findings but refused to consider such evidence when it was supportive of Plaintiff's claims. (*See* Tr. at 24-25—finding that treatment for mental impairments that occurred after August 2004 regarding severe mental impairments was not relevant but considering Dr. Moran's assessment of Plaintiff's condition in 2005 and Dr. Robinson's assessment in November and December 2004 as supportive of his findings).[4]

---

[4] As to Dr. Moran, the Commissioner argues that this opinion was properly relied on even though it postdated the relevant period since Dr. Finch was no longer available and it was necessary to clarify the issue of Plaintiff's balancing limitation. Dr. Moran did appear to provide a retrospective opinion as to the evidence from 2002 which I find can properly be considered on remand. However, to the extent that Dr. Moran assessed or opined on Plaintiff's functioning as it existed in 2005, it is not relevant as it clearly

-13-

I further note as to the GAF scores in 2003 relied on by the ALJ that no authority has been cited to show that a GAF score, standing alone, proves either improvement or nonseverity. The ALJ ignored the actual medical evidence on this issue from Dr. Robbins and Dr. Blaine, detailed above, which included references to continued, significant, depressed symptoms and impairments related to Plaintiff's depression. This was improper.

The ALJ also notes as a basis for his decision that Plaintiff's mental impairments were not severe that Plaintiff reported to Dr. Schaeffer that he engaged in various activities, such as reading the paper, watching television, doing household chores, going shopping, and visiting with his family. These activities are not, however, necessarily inconsistent with Plaintiff's diagnoses of depression and other mental disorders or the mental impairments complained of by Plaintiff. Further, "sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). Such diversions also do not provide a basis for concluding, without any medical evidence to support such a finding, that an individual's mental impairments are not severe. This constitutes an improper lay opinion of the ALJ. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

Finally, as to the other reasons given by the ALJ in finding Plaintiff's mental impairments not severe, I find that they do not support his finding. The fact that Dr. Blaine chose not to provide an opinion as to an onset date of December 2002 when asked to by Plaintiff's counsel does not provide support for concluding that the earlier

---

postdated the time period relevant to Plaintiff's disability.

onset date is unsupported, since Dr. Blaine did not start treating Plaintiff until August of 2004.  It was thus certainly reasonable for him not to attempt to provide an earlier onset date.  The ALJ's finding was mere speculation.  Finally, based on the errors I find the ALJ committed, it is irrelevant that the Appeals Council did not remand on the issue of mental impairments.  However, while on remand I note that ALJ certainly had a duty (or at least the opportunity) to ensure that all the evidence was properly evaluated, which he did not do.

In conclusion on this issue, I find that the ALJ's decision at step two is not supported by substantial evidence.  A remand is appropriate so that the ALJ can appropriately assess the evidence and testimony supporting the severity of Plaintiff's mental impairments and conduct a proper step two analysis.

2.      Whether the ALJ Erred in Assessing Plaintiff's RFC

I next address the ALJ's findings in connection with Plaintiff's RFC.  Plaintiff argues that three major reasons for reversible legal error exist in connection with the RFC findings: (1) the RFC was incomplete and did not include any treating physician findings; (2) the reasons given for declining to include treating physician findings are not supported by the record; and (3) the RFC is inconsistent with substantial evidence of combined physical and mental impairments.  Plaintiff also argues that the ALJ failed to conduct a function by function assessment of Plaintiff's capacity as required by SSR 96-8p.  Thus, he argues that the ALJ's findings do not accurately reflect his limitations and that the case should be remanded so that this analysis can be properly completed.

I first address the fact that the ALJ rejected the findings of treating physician Dr. Greene in evaluating Plaintiff's RFC.  (Tr. 23.)  Specifically, he rejected the Medical

Source Statement (Physical) filled out by Dr. Greene wherein he assesses Plaintiff's physical capacity to work. (*Id.* 214-218.) The ALJ also rejected the Med-9 forms in which Dr. Greene found that Plaintiff is disabled. (*Id.* at 23.) I agree with Plaintiff that the ALJ did not properly weigh the opinions of Dr. Greene.

An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted). "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. U.S. Dept. of Health and Human Services*, 52 F.3d 288, 290 (10th Cir. 1994).

Generally, the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996). However, a treating physician's report can be rejected "if it is brief, conclusory and unsupported by medical evidence" or is "not supported by specific findings." *Castellano v. Sec. of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). As to other medical sources, the opinion of an examining physician or psychologist is entitled to less weight than that of a treating physician or psychologist. *Robinson*, 366 F.3d at 1084.

I find that the ALJ did not weigh Dr. Greene's opinions as a whole from all of his medical records but simply rejected certain forms filled out by Dr. Greene. Thus, he did not state what weight Dr. Greene's opinions and findings as a whole should be given or

whether he gave any deference to them as a treating physician.[5]  Further, the ALJ did

not discuss or state what weight he was giving to other findings of treating physicians or

psychiatrists, including Dr. Glassman (Plaintiff's orthopedic specialist) and Dr. Robbins

and Dr. Blaine (treating psychologists from Aurora Mental Health).  I also note that the

ALJ's task was to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the

treating physician's report, not the other way around."  *Goatcher*, 52 F.3d at 290.  The

ALJ did not appear to follow this rule.

I also find that the ALJ's specific reasons for rejecting the opinions of Dr. Greene

are not supported by substantial evidence and/or are legal error.  First, the ALJ appeared

to reject the entirety of the Medical Source Statement (Physical) filled out by Dr. Greene.

The only two reasons given for this are that the lifting/carrying restriction was based on a

one percent disability of Plaintiff's elbow which was not supported by the consultative

examination or Dr. Greene's clinical notes, and that Dr. Greene's opinions were based

on Plaintiff's subjective complaints rather than objective medical opinions.  I find error

with these findings.

As to the first reason given by the ALJ, the medical evidence during the relevant

period includes a finding of right radial neuropathy (Tr. 191) which could have supported

the finding as to the disability of Plaintiff's elbow.  Further, Dr. Greene also gave as a

basis for his lifting and carrying restriction the diagnosis of current rheumatology (on joint

_____

[5]  Even when an ALJ decides that a treating physician's opinions are not entitled to controlling
weight, that does not allow him to reject the physician's opinions outright.  *Langley*, 373 F.3d at 1120.
Instead, the opinions are "'still entitled to deference and [should be] weighed using all of the [relevant]
factors.'"  *Id.* (quotation omitted).  The ALJ's decision does not reflect that he gave deference to
Dr. Greene's or the other treating physicians' findings and weighed them, or that he gave "any
consideration of what lesser weight the opinions should be given or discuss[ed] the relevant factors set out
in [42 U.S.C.] § 404.1527."  *Id.*

injection schedule) for DJD low back which the ALJ ignored. The record arguably support findings of this, including the findings of Dr. Finch. (*Id.* 211.) Even consulting physician Dr. Moran acknowledged that an MRI taken in 2002 showed mild degenerative changes." (*Id.* 267) At the very least, if the ALJ felt the record was unclear on this issue, he had a duty to contact Dr. Greene for clarification. *McGoffin*, 288 F.3d at 1252.

As to the second reason given by the ALJ in rejecting Dr. Greene's Medical Source Statement, an ALJ may not reject the opinions of a treating physician "based merely on his own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's subjective complaints." *Langley*, 373 F.3d at 1121. "The ALJ [must have] a legal or evidentiary basis for his finding that [a treating physician's] opinions were based merely on Plaintiff's subjective complaints." *Id.*; *see also Garcia v. Barnhart*, No. 05-2322, 2006 WL 1923984, at *3 (10th Cir. 2006) ("This court has made it clear that when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from correct legal standards and his decision is not supported by substantial evidence").

In this case, Dr. Greene had a longstanding relationship with the Plaintiff, his records document neck and back pain and, most importantly, Dr. Greene indicated that the basis for his findings in the Medical Source Statement were his clinical evaluations and past experience with the Plaintiff. (Tr. 217.) Accordingly, this finding of the ALJ is plainly not supported by substantial evidence. *See also Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (a medical doctors's statements about Plaintiff's condition or impairments "are specific medical findings" and an ALJ errs in rejecting those findings in the absence of conflicting evidence).

The ALJ also rejected Dr. Greene's Med-9 forms. He asserted as one ground that the issue of disability is reserved to the Commissioner. (Tr. at 32.) While I agree that disability is an issue reserved for the Commissioner, Dr. Greene's findings on this issue still needed to be considered and weighed. *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. 2002) ("opinions from any medical source on issues reserved to the Commissioner must never be ignored . . . . The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability. . . .") The ALJ also rejected the Med-9 forms on the basis that Dr. Greene did not address the impact of alcohol on Plaintiff's mental impairments. The form did not, however, ask for that issue to be addressed. Again, if the record was unclear on that issue, the ALJ had a duty to seek clarification from Dr. Greene rather than simply use this as a basis to reject his opinions outright.

Based on the foregoing, I find that the ALJ did not properly assess the evidence from Dr. Greene and the treating practitioners. The RFC must be reassessed on remand, properly weighing and considering the evidence as to both Plaintiff's mental and physical impairments.

I find further errors in connection with the assessment of Plaintiff's mental RFC. First, as noted previously, the ALJ erred in his consideration of whether Plaintiff's mental limitations were severe at step two as he did not adequately consider or address the evidence on this issue. The ALJ must also adequately address the medical evidence in assessing Plaintiff's mental RFC. Contrary to the ALJ's findings, Dr. Greene's diagnoses are supported by other evidence, including Dr. Glassman's diagnosis and treatment of Plaintiff's PTSD, Dr. Robbins' diagnosis and treatment, Dr. Blaine's diagnoses and

treatment of Major Depressive Disorder and Anxiety, and Dr. Schaeffer's diagnosis of depression and assignment of a GAF of 60.

In assessing Plaintiff's mental RFC, the ALJ must articulate and adequately "assess the nature and extent of [the claimant's] mental limitations" to enable a correct and complete determination of his "RFC for work activity on a regular and continuous basis." 20 C.F.R. § 404.1545(b). Further, the ALJ should address whether the claimant can "'focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder.'" *Washington*, 37 F.3d at 1440 (quotation omitted). Further, "'[a] finding that a claimant is able to engage in substantial gainful activity requires . . . a determination that the claimant can *hold* whatever job he finds for a significant period of time.'" *Id.* at 1442 (emphasis in original) (quotation omitted). The ALJ did not consider these issues.

Further, the ALJ did not assess all of Plaintiff's impairments in combination, including those found not to be severe. For example, there was evidence in the record of fatigue caused by insomnia, panic or anxiety attacks, decreased concentration, flat effect, high levels of anxiety and decreased motivation. These need to be properly considered. *See* SSR 96-8p, 1996 WL 374184, at *5 (1996) ("In assessing RFC, "the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, including those that are not 'severe'. While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities it may – when considered with other limitations or restrictions due to impairments – be critical to the outcome of a claim").

The record also demonstrates that Plaintiff complained of back pain. "If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at \*5 (10th Cir. 1994). "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers*.'" *Id.* (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted). "A vocational expert is ordinarily required to determine what limitation. . . pain might impose on [Plaintiff's] ability to do. . . work." *Id.*[6]

Based on the foregoing, I find that the ALJ erred in assessing Plaintiff's RFC. On remand, the ALJ must properly consider all the evidence and determine on a function by function basis what Plaintiff's RFC is. See SSR 96-8p.

3.    Whether the ALJ Erred in Finding that Plaintiff Was Able to Perform His Past Relevant Work

Finally, I find that the failure to properly assess Plaintiff's physical and mental limitations at the first phase of step four (in connection with the RFC) compromised the later phases of step four, including the finding that Plaintiff was able to perform his past relevant work. "Step four of the sequential analysis . . . is comprised of three steps." *Winfrey*, 92 F.3d at 1023. In the first phase, the ALJ must evaluate a claimant's physical

---

[6]    I further note that it appears the ALJ failed to follow the requirements of 20 C.F.R. § 404.1520a in addressing the evaluation of mental impairments. Under this regulation, the ALJ must "first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable mental impairment(s). *Id.*, § 404.1520a(b)(1). If an impairment exists, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document the findings in accordance with paragraph (e) of this section. *Id.* The ALJ must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record the findings. After this rating, the ALJ is then to determine the severity of the impairment from such rating. *Id.*, § 404.1520a(d).

and mental RFC and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. *Id.* "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.*

At the first phase, since I found that the ALJ did not properly consider or weigh the medical evidence, the RFC does not necessarily encompass all of Plaintiff's impairments. I also find that the ALJ erred at the second phase of step four. In that regard, the ALJ made no inquiry into, or any findings specifying the mental demands of Plaintiff's past relevant work. I find that this was error given the record which shows cognitive impairments as well as other stress related impairments. *See Winfrey*, 92 F.3d at 1073) ("the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'". . . Where there are mental limitations, the ALJ must obtain a "precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is inconsistent with such work.'") (quotation omitted).

The one mental impairment that the ALJ did address was the use of judgment. The ALJ acknowledged in his opinion that Dr. Schaeffer's Mental Status Examination results showed deficits in judgment (Tr. 26), although he erroneously ignored the other deficits noted by Dr. Schaeffer and the other practitioners. *See Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (remand necessary where the ALJ accepted some limitations of physician but rejected others without discussion). However, the ALJ did not

ask the VE or the Plaintiff about the need for adequate judgment in Plaintiff's job.[7]

Plaintiff asserts that if the ALJ had asked him if his past work required the exercise of

judgment, he would have found out that Plaintiff had to exercise courageous judgment in

emergencies, as well as judgment for appropriate action in his supervisory duties

involving the work of his employees.  (Tr. 127) (calculate production by measuring time

spent on surveys), 128 (in charge of call center, evaluated supervisors quality and

production), 149 (responsible for disciplining and evaluating supervisors, had to open

and close call center).

Instead, the ALJ concluded without any evidence that the impairment in judgment

was not relevant to Plaintiff's past relevant work.   Specifically, he found that Plaintiff's

past relevant work "does not involve duties that require altruism and courage in the face

of physical dangers, such as found in the work of police officer or firefighter."  (*Id.*)  I find

that this is legally erroneous.  First, the ALJ's finding is speculative because he did not

ask Plaintiff about the exercise of judgment required of his past work demands.  Second,

it is unsupported since the test for judgment from the mental status examination

indicates a claimant's ability to appropriately exercise judgment in any situation, not just

in an emergency or where courage or altruism are required.

Finally, since I find that the ALJ erred at the first phases of step four, the ALJ was

unable to adequately assess Plaintiff's ability to perform his past relevant work.  *See*

*Bowman v. Astrue*, 511 F.3d 1270, 1273 (10th Cir. 2008) (finding that a remand was

appropriate where the ALJ failed to make the necessary findings at phase two of step

---

[7]  Indeed, he rejected Plaintiff's attorney's request at the hearing that this impairment be inquired
into with the VE.  (Tr. 313-14.)

four, which meant that the ALJ was unable to make the necessary function-by-function comparison between the claimant's impairments and the demands of her past work as required at step three, or to determine whether the impairments had an ability on the claimant's ability to perform that work); *see also Frantz*, 509 F.3d at 1303-04.  I thus find that the case must be remanded so that the ALJ can: (1) properly assess Plaintiff's RFC including his mental impairments, (2) ask about the demands of Plaintiff's past relevant work, and (3) make findings comparing the mental and physical demands of that work with Plaintiff's capabilities.  Further, if the ALJ finds on remand that Plaintiff is not able to perform his past relevant work, he must determine whether Plaintiff, a person who is now of advanced age, can perform other unskilled sedentary work.  This is consistent with the Appeals Council's Order of Remand which ordered that the issue be addressed.

IV.     CONCLUSION

        Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis at step two and in connection with Plaintiff's RFC.

        Accordingly, it is

        ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for a rehearing pursuant to 42 U.S.C. § 405(g).

        Dated September 30, 2008

                                BY THE COURT:


                                s/ Wiley Y. Daniel
                                Wiley Y. Daniel
                                U. S. District Judge